IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re:<br><br>PACIFIC ENERGY RESOURCES LTD., *et al*,[1]<br><br>                            Debtors. | ) Chapter 11<br>)<br>) Case No. 09-10785 (KJC)<br>) Jointly Administered<br>) |
| UNION OIL COMPANY OF CALIFORNIA,<br><br>                            Plaintiff,<br><br>v.<br><br>PACIFIC ENERGY ALASKA OPERATING, LLC,<br>and SILVER POINT FINANCE, LLC<br><br>                            Defendants. | )<br>)<br>)<br>)<br>)<br>) Adv. Proc. No. 09-<br>)<br>)<br>)<br>) |

**COMPLAINT FOR DECLARATORY JUDGMENT DETERMINING
VALIDITY AND PRIORITY OF LIENS**

Plaintiff Union Oil Company of California ("**Union**"), by its undersigned attorneys, as and for its complaint against Pacific Energy Alaska Operating, LLC ("**PEAO**") and Silver Point Finance, LLC ("**Silver Point**," and with PEAO, collectively, the "**Defendants**") alleges as follows:

**Jurisdiction and Venue**

1. Plaintiff brings this adversary proceeding to determine the validity and priority of liens pursuant to Federal Rule of Bankruptcy Procedure 7001(2). This Court has jurisdiction

---

[1] The Debtors in these cases, along with the last four digits of each of the Debtors' federal tax identification number, are: Pacific Energy Resources Ltd. (3442); Petrocal Acquisition Corp. (6249); Pacific Energy Alaska Holdings, LLC (tax I.D. # not available); Carneros Acquisition Corp. (5866); Pacific Energy Alaska Operating LLC (7021); San Pedro Bay Pipeline Company (1234); Carneros Energy, Inc. (9487); and Gotland Oil, Inc. (5463). The mailing address for all of the Debtors is 111 W. Ocean Blvd, Suite 1240, Long Beach, CA 90802.

701553990v7

over the parties and subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(B) and (K). Venue is proper pursuant to 28 U.S.C. § 1409.

2. Plaintiff brings this adversary proceeding to resolve Union's and the Defendants' respective claims to ownership of certain proceeds of oil sales which, pursuant to this Court's order (the "**Order**") governing further proceedings on motion of Union Oil Company of California for relief from automatic stay (Doc. No. 230), the debtors in the above-styled bankruptcy case hold in a segregated, interest-bearing account, pending a determination of which party holds title to such proceeds.

## Parties

3. Union is a California corporation with its principal place of business located at 6001 Bollinger Canyon Road, San Ramon, CA 94583-2324.

4. Upon information and belief, PEAO is a Delaware limited liability company with its principal place of business located at 111 West Ocean Boulevard, Suite 1240, Long Beach, CA 90802.

5. Upon information and belief, Silver Point is a Delaware limited liability company with its principal place of business at 2 Greenwich Plaza, 1st Floor, Greenwich, CT 06830.

## Factual Background

### Chain of Title

6. In 1962, Union, Marathon Oil Company ("**Marathon**"), and various others entered into a number of oil and gas leases with the State of Alaska covering property in the Trading Bay area in Cook Inlet, near Anchorage, Alaska. The leases are all on the same printed form. These leases cover two oil fields, one known as Trading Bay Unit ("**TBU**"), and the other an adjacent area known as the Trading Bay Field ("**TBF**").

701553990v7

7. The TBU and the TBF are both located entirely in the Anchorage Recording District, Third Judicial District, State of Alaska.

8. In February 1967, the various lessees entered into a Unit Agreement for the Development and Operation of the Trading Bay Unit Area, State of Alaska ("**Unit Agreement**") and a Unit Operating Agreement - Trading Bay Unit ("**TBUOA**"). The Unit Agreement combined the leases into a single field for the purpose of producing oil and gas. The TBUOA was recorded January 26, 1999 in the real property records of the Anchorage Recording District at Book 3214 Page 1.

9. The TBUOA was also recorded in the fixture filing records of the Anchorage Recording District, at Book 3214 page 421 on January 26, 1999.

10. Over time, offshore drilling platforms were constructed on the TBU and support facilities were constructed on the west side of Cook Inlet. Union and all the other lessees held working interests in the TBU.

11. By 1996, Union and Marathon had by acquisition become the only two working interest owners of the oil and gas leases in the Trading Bay area. That year, Union and Marathon entered into the Trading Bay Field Joint Operating Agreement ("**TBFJOA**," and with the TBUOA, collectively, the "**Operating Agreements**"). The TBFJOA is similar in substance to the TBUOA. The TBFJOA was recorded January 26, 1999 in the real property records of the Anchorage Recording District at Book 3412, Page 421.

12. The TBFJOA was also recorded in the fixture filing records of the Anchorage Recording District, at Book 3214 page 469 on January 26, 1999.

13. Union is currently the Operator of both the TBU and the TBF (collectively, "**TBU/TBF**").

701553990v7

14.     The Operating Agreements each give Union, as Operator, lien rights against the working interest owners. Section 19.5 of the TBUOA provides:

> Each Party grants to Unit Operator and the Sub-Operators a lien upon its oil and gas rights in each Tract, its share of Production, and its interest in all Unit property, as security for payment of its share of Costs, together with interest thereon at the rate of six per cent (6%) per annum. Unit Operator and each Sub-Operator shall have the right to bring suit to enforce collection of such indebtedness with or without seeking foreclosure of the lien. In addition, upon default by any Party in the payment of its share of Costs, Unit Operator and each Sub-Operator shall have the right to collect from the purchaser the proceeds from the sale of such Party's share of Production until the amount owed by such Party, plus interest as aforesaid, has been paid.

15.     Similarly, Section 11.4 of the TBFJOA provides:

> Each Party grants to the Operator a lien upon its Working Interests in the Area, and its interest in all property, a security for payment of its share of Costs, together with interest thereon at the rate of twelve per cent (12%) per annum or, if lower, at the highest rate allowed by law. Operator shall have the right to bring suit to enforce collection of such indebtedness with or without seeking foreclosure of the lien. In addition, upon default by any Party in the payment of its share of Costs, Operator shall have the right to collect from the purchaser the proceeds from the sale of such Party's share of Production until the amount owed by such Party, plus interest as aforesaid, has been paid. Each purchaser shall be entitled to rely upon Operator's written statement concerning the amount of any amount due hereunder.

16.     In December 1996, Marathon assigned its Trading Bay oil interests to Forcenergy, Inc. ("**Forcenergy**"). Marathon retained its interest in the Trading Bay gas interests. In 2000, following a 1999 Forcenergy Chapter 11 filing, Forest Oil Corporation ("**Forest**") acquired Forcenergy and all of its TBU/TBF interests by merger.

17.     On December 27, 2001, and effective January 1, 2002, Union and Forest entered into an alignment agreement which aligned the parties' working oil interests in the TBU/TBF so that Union held 53.2% and Forest held 46.8% of the working interests in TBU/TBF.

18. On June 11, 2002, the State of Alaska approved cross-assignments of interests in the various TBU/TBF leases such that Union had a 53.2% working interest in each lease and Forest had a 46.8% working interest.

19. On March 15, 2002, at No. 2002-017741-0, Union caused to be filed a notice of lien on Forest's interests in the TBU in the records of the Anchorage Recording District (the "**TBU Lien Notice**"). Among other things, the TBU Lien Notice sets forth Forest as the owner of the real and personal property on which Union held a lien; it provides the 1999 recording information for the TBUOA, and it contains a legal description of the TBU.

20. Also on March 15, 2002, at No. 2002-017742-0, Union caused to be filed a notice of lien on Forest's interests in the TBF in the records of the Anchorage Recording District (the "**TBF Lien Notice**"). Among other things, the TBF Lien Notice sets forth Forest as the owner of the real and personal property on which Union held a lien; it provides the 1999 recording information for the TBFJOA, and it contains a legal description for the TBF.

21. Effective November 1, 2006, Forest Oil transferred its TBU/TBF interests to a subsidiary, Forest Alaska Holding, LLC ("**FAH**"), which then transferred those interests to Forest Alaska Operating, LLC ("**FAO**"), another Forest Oil subsidiary.

22. Effective January 1, 2007, Pacific Energy Resources, Ltd. ("**PERL**") purchased the membership interest in FAO, and then in August 2007, changed the name of that entity to Pacific Energy Alaska Operating, LLC ("**PEAO**").

23. In connection with the PERL acquisition of Forest Oil's interests in TBU/TBF, PERL and PEAO executed a Deed of Trust, Security Agreement, Financing Statement and Fixture Filing [First Lien] (the "**First Deed of Trust**") in favor of Silver Point, as administrative and collateral agent, which deed of trust was recorded August 27, 2007 at No. 2007-054468-0 in

701553990v7

the Anchorage Recording District. Upon information and belief, at that time Silver Point had actual knowledge of Union's prior recorded liens.

24. Also in connection with the PERL acquisition of Forest Oil's interests in TBU/TBF, PERL and PEAO executed a Deed of Trust, Security Agreement, Financing Statement and Fixture Filing [Second Lien] (the "**Second Deed of Trust**") in favor of Silver Point, as administrative and collateral agent, which deed of trust was recorded on August 27, 2007 at No. 2007-054469-0 in the Anchorage Recording District. Upon information and belief, at that time Silver Point had actual knowledge of Union's prior recorded liens.

25. Finally, PEAO also executed two overriding royalty interest conveyances, one to SPCP Group Alaska LLC and the other to SPCP Group III Alaska LLC (the "**Overriding Royalty Holders**"). Both of these overriding royalty interests were recorded August 27, 2007 at Nos. 2007-054466-0 and 2007-054467-0 in the Anchorage Recording District. Upon information and belief, at that time the Overriding Royalty Holders had actual knowledge of Union's prior recorded liens.

26. On June 5, 2008, Union caused to be filed a financing statement ("**2008 Fixture Filing**"), filed as a fixture filing in the records of the Anchorage Recording District, at No. 2008-032972-0. The 2008 Fixture Filing identifies PEAO as the debtor, contains maps and legal descriptions of TBU/TBF, and describes the collateral as, "Interest in, and all oil or gas before or after extraction from, the Trading Bay Field or Trading Bay Unit, in the Cook Inlet Area of Alaska, as set forth in the attachment hereto."

27. Currently, Union owns 53.2% of the working interest and PEAO owns 46.8% of the working interest at TBU/TBF.

701553990v7

**Union's Pre-Petition Lien Enforcement**

28.     As Operator under the TBUOA and TBFJOA, Union prepares monthly invoices, or joint interest billings ("**JIBs**"), which it sends to the working interest owners setting forth the Trading Bay operating expenses and expenditures which the working interests owners are obligated under those agreements to pay on a timely basis.

29.     All of the PEAO TBU/TBF oil produced to date has been sold to Tesoro Alaska Company or an affiliate ("**Tesoro**"), which owns a refinery on the east shore of Cook Inlet. The oil is delivered to a barge on approximately a monthly basis. The deliveries are referred to as "lifts."

30.     PEAO and Union each have their own sales agreements with Tesoro. Tesoro pays PEAO and Union separately at the prices and on the terms set forth in their respective sales agreements.

31.     In spring 2008, PEAO began falling behind on its JIB payments.

32.     On October 24, 2008, Union exercised its lien rights under the Operating Agreements and served notice upon Tesoro that Tesoro should pay, directly to Union, payments otherwise due by Tesoro to PEAO on account of proceeds from the sale of PEAO's share of production from TBU/TBF.

33.     Between October 24, 2008, and March 9, 2009 (the "**Petition Date**"), Tesoro paid the PEAO share of the Trading Bay production directly to Union pursuant to Union's lien rights. However, those payments were less than PEAO's ongoing Trading Bay JIBs, and as a consequence, the outstanding JIB balance was $26,352,066.83 as of the Petition Date.

34.     On the Petition Date PERL and PEAO filed for bankruptcy protection under chapter 11 in this Court, in Case Nos. 09-10785 (KJC) and 09-10789 (KJC) respectively.

**Post-Petition Events**

35. A lift occurred March 15, 2009. PEAO's share of oil sale proceeds from that lift was approximately $3,946,033.62. A second post-petition lift occurred on or around April 5, 2009. PEAO's share of oil sale proceeds from that lift has not yet been determined. A third post-petition lift occurred on or around April 29, 2009. PEAO's share of oil sale proceeds from that lift is approximately $347,322 (with the March 15 lift proceeds and the April 5 lift proceeds, collectively, the "**Lift Proceeds**").

36. On March 23, 2009, Union filed a motion for relief from the automatic stay to allow Union to assert its lien rights in the Lift Proceeds (the "**Motion**") (Docket No. 100). On April 15, 2009, a preliminary hearing was held on the Motion. The final hearing on the Motion has been continued without date pending the outcome of this adversary action.

37. On April 28, 2009, this Court entered the Order, which provides that the Lift Proceeds would be held by the debtors in a segregated, interest-bearing account pending further order from this Court, and that the interests of all persons would attach to those proceeds to the same extent and in the same order of priority as in the underlying property.

### Count I
### Declaratory Judgment that Union's Perfected Security Interest in PEAO's Working Interest Is Valid and Superior to Any Interest of Defendants

38. Plaintiff realleges and incorporates herein by reference each and every allegation contained in the foregoing paragraphs of this complaint.

**Validity of Union's Security Interest**

39. Section 19.5 of the TBUOA grants Union "a lien upon [PEAO's] oil and gas rights in each Tract, its share of Production, and its interest in all Unit property" and "the right to collect from the purchaser the proceeds from the sale of [PEAO's] share of Production."

40.  Section 11.4 of the TBFJOA grants Union "a lien upon [PEAO's] Working Interests in the [TBF], and [PEAO's] interest in all property" in the TBF.

41.  The 2002 Lien Notices provided "constructive notice of the contents of [those documents] to subsequent purchasers and holders of a security interest" in TBU/TBF within the meaning of Alaska's recording statute, AS 40.17.080(a).[2]

42.  Wherefore, Union's security interests in PEAO's working interest, and in any other real property interest PEAO may have at TBU or TBF, are valid security interests.

**Priority of Union's Security Interest**

43.  Silver Point's First Deed of Trust and Second Deed of Trust and the overriding royalties, all recorded August 27, 2007, were recorded subsequent to the recording of the Operating Agreements in 1999 and the 2002 Lien Notices in 2002.

44.  When Silver Point and the Overriding Royalty Holders acquired their security interests, they had both actual and record knowledge of Union's interests in the TBU and TBF.

45.  Alaska's recording statute, AS 40.17.080(b), protects bona fide purchasers and lienholders against unrecorded adverse interests unless they have actual knowledge of that interest.

46.  Because Silver Point and the Overriding Royalty Holders had both actual and record knowledge that their interests were recorded subsequent to Union's Operating Agreements and lien notices, Union's lien in PEAO's interest in TBU/TBF is superior to Silver Point's.

---

[2] AS 40.17.080(a) provides:
(a) Subject to (c) and (d) of this section, from the time a document is recorded in the records of the recording district in which land affected by it is located, the recorded document is constructive notice of the contents of the document to subsequent purchasers and holders of a security interest in the same property or a part of the property.

## Count II
### Declaratory Judgment that Union's Perfected Security Interest in PEAO's Share of Production Is Valid and Superior to Defandants'

47. Plaintiff realleges and incorporates herein by reference each and every allegation contained in the foregoing paragraphs of this complaint.

**Validity of Union's Security Interest**

48. Section 19.5 of the TBUOA and Section 11.4 of the TBFJOA grant Union a security interest lien in PEAO's share of Trading Bay oil production to secure PEAO's payment obligations under the TBUOA and TBFJOA.

49. As of the Petition Date, the oil that generated PEAO's Lift Proceeds constituted "as-extracted collateral" within the meaning of AS 45.29.102(a)(7).

50. Each Operating Agreement is a mortgage within the meaning of AS 45.29.102(a)(68), because those agreements are consensual interests in real property, including fixtures, that secure payment or performance of the obligations contained in those documents.

51. Under Alaska law, a security interest in as-extracted collateral may be perfected by a mortgage, provided that the mortgage satisfies the applicable requirements of a financing statement. AS 45.29.50(c).

52. AS 45.29.515(a) and (g), read together, provide that a mortgage that is effective as a financing statement filed as a fixture filing remains effective as a financing statement filed as a fixture filing until the mortgage is satisfied, and that this is an exception to the general rule that financing statements are effective for only five years.

53. As to Forest Oil, the 2002 Lien Notices, combined with the recorded Operating Agreements, satisfied all applicable requirements of AS 45.29.502(a) and (b) for mortgages to serve as fixture filings.

54. When Forest Oil conveyed its interests in TBU and TBF to FAH, and when FAH transferred those interests to FAO, the recorded Operating Agreements and 2002 Lien Notices remained effective as against those transferees by virtue of AS 45.29.507(a).

55. When FAO changed its name to PEAO in late 2007, the name change did not affect Union's security interest in PEAO's oil or interest in oil at TBU/TBF, because that oil or interest in oil, was "collateral acquired by the debtor before...the change," within the meaning of AS 45.29.507(c).

56. Insofar as is relevant to this suit, there is no "collateral acquired by the debtor more than four months after the change" in name from FAO to PEAO, within the meaning of AS 45.29.507(c)(2).

57. The 2008 Fixture Filing, recorded June 5, 2008, is an additional, if redundant proper perfection of Union's security interest in the PEAO share of TBU/TBF oil.

58. Wherefore, Union holds a valid perfected security interest in the PEAO's interest in all oil extracted as of the Petition Date.

**Priority of Union's Security Interest**

59. Because Union's perfection was prior to Silver Point's and the Overriding Royalty Holders' perfection, Union's security interest in the oil and its proceeds is senior to Silver Point's and the Overriding Royalty Holders' by operation of AS 45.29.322(b)(1).

**Count III**
**Any TBU/TBF Revenue Silver Point Receives Must Come from Net Revenue**

60. Plaintiff realleges and incorporates herein by reference each and every allegation contained in the foregoing paragraphs of this complaint.

61. When a working interest owner is in default on payment of its share of operating costs, the TBUOA and the TBFJOA each grant the operator the right to collect the proceeds from

11

that working interest owner's share of production directly from the purchaser until repaid in full, including interest.

62. Although the Operating Agreements contemplate Union paying production costs and being reimbursed by PEAO, they have no such provision for Union advancing royalty costs or other lease burdens. To the contrary, "Costs" to be advanced by Union, as defined, specifically exclude such "Lease Burdens" as royalties, overriding royalties, production payments, and any other burden on a working interest. Additionally, the Operating Agreements provide that liability among the working interest owners is several and not joint or collective.

63. Wherefore, Union has no contractual duty to pay or to ensure payment of PEAO's royalty or other lease burdens.

64. Because Union has a superior, perfected security interest in the as-extracted collateral, the Lift Proceeds currently held by the debtors should be released to Union without further delay.

WHEREFORE, Plaintiff prays the Court enter a judgment in favor of the Plaintiff and against the Defendants declaring as follows:

1. that Union holds a valid, perfected, first-priority security interest in PEAO's interests in the TBU and TBF.

2. that Union's security interest in PEAO's interest in the TBU and TBF is senior and prior to the security interests of Silver Point or of the Overriding Royalty Holders in that same collateral.

3. that Union holds a valid perfected security interest in the Lift Proceeds.

4. that Union's security interests in the Lift Proceeds is senior and prior to the security interest of Silver Point in the Lift Proceeds.

     5.    that Union is entitled to receipt of the Lift Proceeds upon entry of a judgment in this adversary proceeding.

     6.    that Union is entitled to costs, interest, and attorney fees.

     7.    Such other and further relief as this Court deems just and proper.

Dated: June 18, 2009
       Wilmington, DE

Respectfully submitted,

By: *[signature]*

Norman M. Monhait (ID No. 1040)
Rosenthal, Monhait & Goddess, P.A.
919 North Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899-1070
Telephone: (302) 656-4433
Facsimile: (302) 658-7567
nmonhait@rmgglaw.com

and

Richard L. Epling
David A. Crichlow
Roger Elder
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036
Telephone: (212) 858-1000
Facsimile: (212) 858-1500

and

Cabot Christianson
Christianson & Spraker
911 West 8th Avenue, Suite 201
Anchorage AK 99501
Telephone: (907) 258-6016
Facsimile: (907) 258-2026
cabot@cslawyers.net

*Counsel to Union Oil Company of California, a California Corporation*

701553990v7