# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| PACIFIC ENERGY RESOURCES LTD., *et al.*, ) | |
| ) | Case No. 09-10785 (KJC) |
| Debtors. ) | Jointly Administered |
| ) | |
| _____ ) | |
| ) | |
| UNION OIL COMPANY OF CALIFORNIA, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | Adv. Proc. No. 09-51066 |
| PACIFIC ENERGY ALASKA OPERATING, ) | |
| LLC, and SILVER POINT FINANCE, LLC, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANT SILVER POINT FINANCE'S REPLY
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Ian S. Fredericks (DE Bar ID No. 4626)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Rodney Square, P.O. Box 636
Wilmington, Delaware 19899
Telephone: (302) 651-3000
Facsimile: (302) 651-3001

Albert L. Hogan III
Chris L. Dickerson
T. Kellan Grant
Torey B. Chambers
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 407-0700
Facsimile: (312) 407-0411

January 5, 2010

# TABLE OF CONTENTS

PRELIMINARY STATEMENT..........................................................................................1

ARGUMENT....................................................................................................................1

I. Alaska's UCC Art. 9 Governs the Lien Priorities in This Case .............................1

II. Union Failed to Secure Its Lien on the Lift Proceeds Prior to 2008 .......................4

    A. Union's Filings Were Seriously Misleading Under Alaska's UCC Art. 9..................................................................................................6

    B. Union's 1999 and 2002 Filings Lapsed After Five Years..........................7

III. Alaska's Statutory Lien Does Not Impact Silver Point's First Recorded Lien ........................................................................................................................7

# TABLE OF CITATIONS

## CASES

*In re Arithson*,
   175 B.R. 313 (Bankr. D.N.D. 1994) ............................................................ 3, 4

*Berckeley Inv. Group, Ltd. v. Colkitt*,
   455 F.3d 195, 211 n.20 (3d Cir. 2006) ........................................................ 2, 4

*In re Lexington Healthcare Group, Inc.*,
   335 B.R. 570 (D. Del. 2005) ....................................................................... 9

*Ranney v. Whitewater Engineering*,
   122 P.3d 214 (Alaska 2005) ........................................................................ 8

*Sovereign Bank v. BJ's Wholesale Club, Inc.*,
   533 F.3d 162, 181 (3d Cir. 2008) ................................................................ 2

## STATUTES

Alaska Statutes § 31.05.110(h) ........................................................................ 7, 8

Alaska Statutes § 45.29.102(a)(7) ................................................................ 2, 3, 6

Alaska Statutes §§ 45.29.502 *et seq.* ............................................................. 1, 5

Alaska Statutes § 45.29.507(c) ........................................................................ 6

Alaska Statutes § 45.29.508(b) ........................................................................ 6

Alaska Statutes § 45.29.515(a) ........................................................................ 7

Uniform Commercial Code § 9-102 cmt. 4(c) (2001) ........................................... 3

**PRELIMINARY STATEMENT**

This case is about which party—Silver Point Finance, LLC ("Silver Point") or Union Oil Company of California ("Union")—has a first priority lien in the Lift Proceeds of extracted oil.[1] The Lift Proceeds are personal property, governed by Article 9 of Alaska's Uniform Commercial Code ("Alaska's UCC Art. 9"). When recording its lien, Union repeatedly failed to comply with several of the strict tenets of Alaska's UCC Art. 9, until finally filing properly in 2008. There is no dispute that Silver Point's lien on PEAO's Lift Proceeds was properly recorded in 2007. Alaska's statutory lien does not operate to give Union priority over Silver Point. Because Silver Point was the first to record properly its lien on the Lift Proceeds, Silver Point's lien is superior to Union's.

**ARGUMENT**

**I.     Alaska's UCC Art. 9 Governs the Lien Priorities in This Case**

The Lift Proceeds at issue in this dispute are personal property and therefore subject to the strict recording rules of Alaska's UCC Art. 9, Alaska Stat. §§ 45.29.502 *et seq*. Union did not follow Alaska's UCC Art. 9 in attempting to record its interest prior to 2008. Union tries, unsuccessfully, to argue that Alaska's UCC Art. 9 does not apply, suggesting that the Lift Proceeds are real property and not personal property. All of Union's arguments fail, and Silver Point's prior properly recorded lien is superior.

---

[1] Abbreviations and acronyms in this memorandum have the same meaning as abbreviations and acronyms in Union's Motion for Summary Judgment, Dkt. No. 12 ("Union Brief"); Silver Point's Motion for Summary Judgment, Dkt. No. 21 ("Silver Point Brief"); Response of Pacific Energy Alaska Operating, LLC to Motion of Union Oil Company of California For Summary Judgment, Dkt. No. 20 ("PEAO Resp."); and Union's Reply Brief in Support of Its Motion for Summary Judgment and Answering Brief in Opposition to Silver Point Finance's Cross-Motion for Summary Judgment, Dkt. No. 23 ("Union Reply").

Union claims that "the Lift Proceeds cannot be properly characterized as as-extracted collateral" because "the Lift Proceeds are significantly less than the cost of producing those proceeds." (*See* Union Reply at 6.) This argument is entirely unavailing in light of Union's previous admission that the Lift Proceeds are as-extracted collateral. Union admitted in its complaint that, "[a]s of the Petition Date, the oil that generated PEAO's Lift Proceeds constituted 'as-extracted collateral' within the meaning of Alaska Stat. § 45.29.102(a)(7)." (Am. Compl. ¶ 52.) Union's judicial admission in its pleadings precludes it from now trying to assert that the Lift Proceeds are not as-extracted collateral. *See Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 211 n.20 (3d Cir. 2006) (holding "[j]udicial admissions are concessions in pleadings or briefs that bind the party who makes them" and listing cases); *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 181 (3d Cir. 2008) (rejecting plaintiff's attempt to add a claim that was defeated by a contrary admission in its complaint). Union's explicit admission that the Lift Proceeds are as-extracted collateral (Am. Compl. ¶ 52) defeats all of Union's arguments that attempt to classify the interest as real property and thus exempt from Alaska's UCC Art. 9.

Even if Union had not admitted that Lift Proceeds are as-extracted collateral (Am. Compl. ¶ 52), Union's attempt to avoid application of Alaska's UCC Art. 9 by arguing that the Lift Proceeds cannot be defined as as-extracted collateral still fails. (*See* Union Reply at 6.) To make this argument, Union improperly combines PEAO's alleged production expenses, which are not at issue in this case (*see infra* at 9-10), with the Lift Proceeds, and asserts that because the net value of the two is negative, the Lift Proceeds cannot be as-extracted collateral. (Union Reply at 6.) Assuming, *arguendo*, it is

appropriate to subtract PEAO's expenses from Silver Point's interest in the Lift Proceeds, which it is not, the Lift Proceeds remain as-extracted collateral, even if the resultant interest is negative at some point in time. The UCC does not distinguish accounts with negative value from accounts with positive value, and Union cites no caselaw in support of its position. Thus the Lift Proceeds constitute as-extracted collateral, and, as such, are subject to the filing rules of Alaska's UCC Art. 9.

Union also incorrectly suggests that even though the oil has been extracted and sold as Lift Proceeds, this Court should consider it to be still in the ground and therefore real property, allowing Union to avoid the strict filing rules of Alaska's UCC Art. 9. (Union Reply at 6-7.) Again contradicting its previous judicial admission, Union now asserts that Alaska Stat. § 45.29.102(a)(7) stands for the proposition that "Union's interest attaches, therefore, *before* the oil is as-extracted collateral" (Union Reply at 7; italics in original), making it an interest in real property. Alaska Stat. § 45.29.102(a)(7) actually states the opposite: "'as-extracted collateral' means (A) oil . . . subject to a security interest that (i) is created by a debtor having an interest in the minerals before extraction; and (ii) *attaches* to the minerals *as extracted* . . ." (emphasis added). Union's interest attached to the oil *upon* extraction, not before.[2] *Id.* The law is clear that "[u]nder . . . Article [9], oil, gas, and other minerals that have not been extracted from the ground are treated as real property, to which this Article does not apply. Upon extraction, minerals become personal property (goods) and eligible to be collateral under this Article." U.C.C. § 9-102 cmt. 4(c) (2001). *See also In re Arithson*, 175 B.R. 313, 322

---

[2] Here, because the oil has been extracted and sold (Am. Compl. ¶ 29), asserting that one's security interest attached at some prior date when the oil was in the ground is particularly illogical.

3

(Bankr. D.N.D. 1994) ("[A]ny proceeds flowing from the production of extracted gas and oil is likewise considered personal property governed by Article 9."). The as-extracted collateral, and likewise the Lift Proceeds, are personal property.

In a further unsuccessful attempt to avoid application of Alaska's UCC Art. 9 and characterize its interest as one in real property, Union urges this Court to use the Debtor's Petition Date as a reference point because the oil was in the ground on that date. (Union Reply at 7-9.) This argument also contradicts Union's judicial admission that "as of the Petition Date," the Lift Proceeds constituted as-extracted collateral (Am. Compl. ¶ 52), and therefore must fail on its face. *Berckeley,* 455 F.3d 195 at 211 n.20. Further, the Petition Date has no relevance to this dispute because the Debtor, PEAO, has no interest in the outcome of this case. Even though the Debtor asserts an interest in $2,000,000 of the Lift Proceeds by virtue of the Final DIP Order (PEAO Resp. at 1-2), Silver Point has a lien on all of the Debtor's assets. (Union Brief, Elder Aff. Ex. B.) The only parties with an interest in this dispute are Silver Point and Union. The Petition Date should not be arbitrarily used as a reason to classify the Lift Proceeds as real property so that Union can escape its failures to comply with Alaska's UCC.

## II. Union Failed to Secure Its Lien on the Lift Proceeds Prior to 2008

Union's Trading Bay filings prior to 2008 did not comply with Alaska's UCC Art. 9 and were therefore ineffective. Silver Point properly filed its lien in 2007. Union eventually properly filed in 2008, but Silver Point's earlier filing gives Silver Point a superior lien. Below is a chart summarizing the parties' relevant filings.

4

| Transaction | Filing Necessary to Secure Lien | Lienor's Action |
|---|---|---|
| In December 1996, Forcenergy Inc. acquired an ownership interest. | File a financing statement naming the new debtor within four months. | On January 26, 1999, Union filed its operating agreements naming Forcyenegy as debtor.[3] This filing failed to name the debtor properly and was *seriously misleading*. |
| In 2000, Forest Oil Corporation acquired all of Forcenergy's interests. | File a financing statement naming the new debtor within four months. | On March 15, 2002, Union filed a notice of lien related to Forest Oil. This filing *lapsed* on March 15, 2007. |
| On November 1, 2006, Forest Alaska Holding, LLC, and Forest Alaska Operating LLC ("FAO") acquired all of Forest Oil Corporation's interests. | File a financing statement naming the new debtor within four months. | Union filed nothing. |
| In January 2007, Pacific Energy Resources, Ltd. ("PERL"), purchased all of the membership interests in FAO and changed the name to PEAO. | File a financing statement naming the new debtor within four months. | Union filed nothing identifying PEAO as debtor until 2008.[4] |
| On August 24, 2007, PEAO contracted with Silver Point to grant Silver Point a lien on all PEAO assets in exchange for a loan. | File a financing statement naming PEAO. | On August 27, 2007, Silver Point properly filed a financing statement in the Alaska real property records naming PEAO as debtor. |

*See* Am. Compl. 16-26; Silver Point Brief at 6-7; Union Brief, Elder Aff., Ex. B, Martin Aff., Ex. B; Alaska Stat. §§ 45.29.502 *et seq*.

---

[3] Union claims that the misspelling of Forcenergy's name on its 1999 filing was not seriously misleading due to the availability of an online search of the Alaska Recorder's Office. (Union Reply at 11.) Even if this is true, Union provides no evidence that this online search was actually available when it filed as to Forcynergy more than ten years ago. In any event, the misspelling of Forcynergy provides evidence of Union's history of carelessness with respect to the strict rules of Alaska's UCC Art. 9.

[4] On June 5, 2008, Union filed a financing statement in the Alaska real property records naming PEAO as debtor. (Am. Compl. ¶ 26.)

### A.  Union's Filings Were Seriously Misleading Under Alaska's UCC Art. 9

Union's pre-2008 filings were ineffective because they were seriously misleading under Alaska Stat. § 45.29.507(c) and Alaska Stat. § 45.29.508(b). PEAO acquired its working interest on January 1, 2007. (Union Brief, Elder Aff., Ex. B.) Because Union did not amend its pre-2008 filings to identify PEAO as debtor by May 1, 2007, those financing statements were ineffective and did not perfect any security interest Union acquired after May 1, 2007. Alaska Stat. § 45.29.507(c).

Union asserts that it did not have to amend its lien identifying PEAO as debtor because PEAO did not acquire anything new after its initial agreement securing its working interest. (Union Reply at 9-10.) This is wrong. PEAO acquired new collateral for purposes of Alaska Stat. § 45.29.507(c), every time oil was extracted and sold.

PEAO's interest is in a lease from the Alaskan government permitting PEAO to extract oil from the ground; PEAO does not actually own the subterranean oil or the property above it. (Am. Compl. ¶¶ 6, 8, 16-22.) The only oil in which PEAO owns an interest in is the oil that is extracted. (*Id.*) Union's lien on that interest does not attach until the oil is extracted. Alaska Stat. § 45.29.102(a)(7). Thus repeated extraction of oil after May 1, 2007, gave PEAO new collateral under Alaska Stat. § 45.29.507(c) and necessitated an updated filing to maintain Union's security interest, a filing which Union did not complete.[5]

---

[5]  This makes common sense as well: the character of oil underground is very different from that of extracted oil. While extracted oil is a highly marketable commodity, the value of oil underground is significantly lower due to the costs associated with drilling and operating an oil well. To equate extracted oil with unextracted oil is analogous to equating a finished product with its raw materials. When the oil was extracted after May 1, 2007—more than four months following PEAO's acquisition of its working interest—PEAO acquired new collateral and thus Union was required to amend its filing to add PEAO as debtor in order to secure its interest in that collateral.

### B. Union's 1999 and 2002 Filings Lapsed After Five Years

Even if Union's 1999 and 2002 filings had not been seriously misleading, all of Union's filings lapsed after five years. Alaska Stat. § 45.29.515(a). (*See* Silver Point Brief at 18-20.) Union's January 26, 1999, filings lapsed on January 26, 2004, and Union's March 15, 2002, filings lapsed on March 15, 2007. Union did not properly re-file until June 5, 2008, making Silver Point's August 27, 2007, filing of its lien on the Lift Proceeds first and prior to any lien that Union has on the same interest. (Am. Compl. ¶¶ 16-26.) Actual knowledge of any prior lien is irrelevant under Alaska's UCC Art. 9. (*See* Silver Point Brief at 12.) Therefore, under the straightforward and strict rules of Alaska's UCC Art. 9, Silver Point's security interest in the Lift Proceeds is superior.

### III. Alaska's Statutory Lien Does Not Impact Silver Point's First Recorded Lien

Despite Union's urgings to the contrary, the plain language of Alaska Stat. § 31.05.110(h) does not give Union superpriority over Silver Point's prior recorded lien.[6] The statute does not apply to Silver Point because Silver Point is not a working interest owner. Alaska Stat. § 31.05.110(h) provides that

> the unit has a first and prior lien upon the leasehold estate and all other oil and gas rights (exclusive of a landowner's royalty interest) in and to each separately owned tract, the interest of the owners in and to the unit production and all equipment in the possession of the unit, to secure the payment of the amount of the unit expense charged to and assessed against such separately owned tract.

The plain language of the statute grants the unit operator a first and prior lien only upon the "interest of the *owners* in and to the unit production." *Id.* (emphasis added). Silver Point is not an owner; it is a lender to the interest owner, PEAO. (Am. Compl. ¶¶ 23-24.)

---

[6] Notably Union omitted its statutory lien claim from its original complaint. In an apparent afterthought, Union added the statutory lien claim in its Amended Complaint. (Am. Comp. ¶ 44.)

There would be no reason for the Alaska legislature to specify that the statutory lien applies to "the interest of the owners" unless the legislature intended to exclude nonowners such as Silver Point from the operation of the statutory lien. *See Ranney v. Whitewater Eng'g,* 122 P.3d 214, 218-19 (Alaska 2005) (recognizing that "where a statute expressly enumerates the things or person to which it applies [Alaska courts] often invoke the principle of statutory construction *expressio unius est exclusio alterius*," which "establishes the inference that, where certain things are designated in a statute, all omissions should be understood as exclusions") (internal quotations omitted). If the Alaska legislature intended for Alaska Stat. § 31.05.110(h) to apply to nonowners such as Silver Point, it would have omitted the phrase "the interest of the owners in and to" from the language of the statute. *See id.*

Union's citation to a nonbinding, nonprecedential Oklahoma state court decision does not allow it to escape the plain language of Alaska's statutory lien. The case at bar does not involve Oklahoma law, and Union does not cite any Alaska case that overcomes the fact that Alaska Stat. § 31.05.110(h) does not govern the lien priorities between a unit operator and a lender to a Chapter 11 debtor.

Indeed, the weakness of Union's statutory lien argument is evidenced by Union's attempt to analogize Silver Point's argument to conversion. (*See* Union Reply at 4-5.) This case does not involve conversion, and Union has never alleged conversion against PEAO or Silver Point. Union correctly notes that conversion is "an act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it." (Union Reply at 4; citation and internal quotation omitted.) When this definition is applied to the facts here, Union's conversion analogy fails for several reasons. First, it

8

presumes that the Lift Proceeds are Union's property and thereby presumes the issue in dispute. Second, Silver Point has not wrongfully exerted dominion over any of Union's property. The Lift Proceeds are in escrow. (Union Brief at 9.) Silver Point is simply asserting that it has a superior lien on those Proceeds. Silver Point will take possession of the Lift Proceeds only if this Court finds that Silver Point's lien on the Proceeds is superior to Union's.

Furthermore, Union fails in its attempts to claim that Silver Point has asserted an interest above and beyond PEAO's interest in the Lift Proceeds. (*See* Union Reply at 4-5.) Union's argument relies on *In re Lexington Healthcare Group, Inc.* 335 B.R. 570, 579 (D. Del. 2005) (cited in Union Reply at 5), which holds that security interests are enforceable only against property to which a debtor actually has rights. Here, however, the debtor, PEAO, undisputedly has an interest in the as-extracted collateral. (Am. Compl. ¶¶ 27.) PEAO therefore had the right to grant liens upon this interest as it saw fit. In fact, many debtors grant multiple liens on the same property or interest. Had Union wanted to prevent PEAO from granting third-party liens, Union could have drafted the operating agreements accordingly.

Union also wrongly asserts that Silver Point's argument amounts to a claim that PEAO is entitled to "cost-free production." (Union Reply at 5.) Union's argument confuses the Lift Proceeds and the joint-interest billings; the former represents the sole property at issue in this action, while the latter are PEAO's expenses allegedly owed to Union for the extraction of oil. Silver Point is not responsible for paying PEAO's expenses allegedly owed to Union. (Union Brief, Elder Aff., Ex. B.) Union has the right to litigate against PEAO for its alleged unpaid expenses, but any dispute over expenses

has no bearing on the issue in dispute here, which concerns only whether Silver Point or Union has a superior lien over the Lift Proceeds. Because Silver Point made the first filing that complied with Alaska's UCC Art. 9, Silver Point has the superior lien.

## CONCLUSION

WHEREFORE, for the reasons set forth herein and in Silver Point's previously filed memorandum of law in support of its motion for summary judgment, the Court should grant Silver Point's motion and enter judgment in favor of Silver Point and against plaintiff on all claims in plaintiff's Amended and Supplemental Complaint for Declaratory Judgment Determining Validity and Priority of Liens.

Dated: January 5, 2010

        Respectfully submitted,

        */s/ Ian S. Fredericks*
        Ian S. Fredericks
        SKADDEN, ARPS, SLATE,
          MEAGHER & FLOM LLP
        One Rodney Square, P.O. Box 636
        Wilmington, Delaware 19899
        Telephone: (302) 651-3000
        Facsimile: (302) 651-3001

        Albert L. Hogan III
        Chris L. Dickerson
        T. Kellan Grant
        Torey B. Chambers
        SKADDEN, ARPS, SLATE,
          MEAGHER & FLOM LLP
        155 North Wacker Drive
        Chicago, Illinois 60606
        Telephone: (312) 407-0700
        Facsimile: (312) 407-0411

        *Attorneys for Defendant Silver Point Finance, LLC*

## CERTIFICATE OF SERVICE

I, Ian S. Fredericks, hereby certify that on January 5, 2010, I caused the foregoing Defendant Silver Point Finance's Reply in Support of Its Motion for Summary Judgment to be served on the parties listed on Exhibit A, attached hereto, by first-class mail unless otherwise indicated.

                                                                  */s/ Ian S. Fredericks*
                                                                  Ian S. Fredericks

**EXHIBIT A**
**Service Parties**

Cabot Christianson, Esq.
Christianson & Spraker
911 West 8th Avenue, Suite 201
Anchorage, AK 99501
Tel: 907-258-6016
Fax: 907-258-2026
(Counsel for Union Oil Company of California)

Norman M. Monhait, Esq.
Rosenthal Monhait & Goddess, P.A
919 Market Street, Suite 1401
Citizens Bank Center
Wilmington, DE 19801
Tel: 302-656-4433
Fax: 302-658-7567
Email: nmonhait@rmgglaw.com
(Counsel for Union Oil Company of California)
**(By Hand Delivery)**

Richard L. Epling , Esq.
Pillsbury Winthrop Shaw Pittman LLP
1540 Broadway
New York, NY 10036
Tel: 212-858-1000
Fax: 212-858-1500
(Counsel for Union Oil Company of California)

James E. O'Neill
Kathleen P. Makowski
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
Tel: 302-652-4100
Fax: 302-652-4400
Email: jo'neill@pszyj.com
(Counsel for the Debtors)
**(By Hand Delivery)**

Robert M. Saunders, Esq.
Ira D. Kharasch, Esq.
Pachulski Stang Ziehla & Jones LLP
10100 Santa Monica Boulevard, 11th Floor
Los Angeles, CA 90067
(Counsel for the Debtors)

United States Trustee
844 King Street, Room 2207
Lockbox #35
Wilmington, DE 19899-0035
Tel: 302-573-6491
**(By Hand Delivery)**

David B. Stratton, Esq.
James Carignan, Esq.
Pepper Hamilton LLP
Hercules Plaza, Suite 5100
1313 Market Street
Wilmington, DE 19801
Tel: 302-777-6500
Fax: 302-421-8390
Email: carignaj@pepperlaw.com
(Counsel for the Official Committee of Unsecured Creditors)
**(By Hand Delivery)**

Francis J. Lawall, Esq.
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth & Arch Street
Philadelphia, PA 19103
(Counsel for the Official Committee of Unsecured Creditors)

Filiberto Agusti, Esq.
Steven Reed, Esq.
Joshua Taylor, Esq.
Steptoe & Johnson LLP
1330 Connecticut Avenue NW
Washington, DC 20036
(Counsel for the Official Committee of Unsecured Creditors)

Robbin Itkin, Esq.
Katherine Piper, Esq.
Kelly Frazier, Esq.
Steptoe & Johnson LLP
2121 Avenue of the Stars, 28th Floor
Los Angeles, CA 90067
(Counsel for the Official Committee of Unsecured Creditor)